IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**RAGINA ODDO,**                                                Case No. 1:16 CV 2110

      Plaintiff,                                              Judge Solomon Oliver, Jr

      v.                                                       Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                     REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff, Ragina Oddo ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated August 23, 2016). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI in June 2013, alleging a disability onset date of October 1, 2004. (Tr. 121-27). Her claims were denied initially and upon reconsideration. (Tr. 89, 95). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 97). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on February 11, 2015. (Tr. 26-55). On June 5, 2015, the ALJ found Plaintiff not disabled in a written decision. (Tr. 11-25). The Appeals Council denied Plaintiff's request for review, making the hearing decision

the final decision of the Commissioner. (Tr. 1-6); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on August 23, 2016. (Doc. 1).

**FACTUAL BACKGROUND**[1]

*VE Testimony*

A VE testified at the ALJ hearing. (Tr. 44-54). The ALJ first asked the VE questions about Plaintiff's past relevant work which was a "combination of cashier, a record keeper, inventory person, [and] automotive tech[nician]." (Tr. 48).

In her first hypothetical, the ALJ asked the VE to consider a person with Plaintiff's age, experience, past relevant work, physical restrictions, and who had

> the ability to perform assigned tasks in a setting without demands for sustained pace or concentration and without demands for high productivity or time constraints, and the ability to work in a stable environment with clear and predictable expectations and infrequent changes in routine.

(Tr. 47-48). The VE asked the ALJ to repeat the requirements regarding pace, concentration, productivity, and time constraints. (Tr. 48). The ALJ did, and then the VE responded:

> Well I'm going to take the word no literally and I think conservatively given this part of the hypothetical. In my opinion, the DOT doesn't talk about this, this comes from my education, ongoing education, occupational colleagues, mostly my experience doing this work since 1988. At least conservative level is not going to be productive 20 percent of the time or more given the way I'm interpreting that constellation in the RFC. I'd say there's no work at all for the person.

(Tr. 48). The ALJ and the VE then clarified the hypothetical:

> [**ALJ**] Did you say – I didn't catch every word. Based on your experience that productivity would be affected?

---

1. Plaintiff challenges only the ALJ's interpretation and application of the VE's testimony regarding the availability of jobs in the national economy at Step Five of the sequential evaluation. *See* 20 C.F.R. § 416.912(f). Plaintiff has waived argument on issues not raised in her opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). The Court, therefore, finds it unnecessary to summarize the medical record and focuses rather on the relevant procedural history of this case.

> [**VE**] Yes, at least 20 percent or more, and I think that's a conservative judgment given the hypothetical for – it doesn't say frequent, constant, occasional, it says no, none, zero sustained pace but that's the definition of work. So if I'm understanding the hypothetical correctly, there's no work at all for this person given that alone hypothetical.
>
> [**ALJ**] Well actually the word 'no' is not in there although there is the negative. Let me read it again and see if your interpretation is the same. The ability to perform assigned tasks in a setting without demands for sustained pace or concentration, and without demands for high productivity or time constraints, so I would not say that it is without – I would not say it has no demands but it is excluding high demands, time constraints, and a sustained pace so that would include work performed at your own pace that does not have high productivity demands or time constraints. Does that change your –
>
> [**VE**] That is very helpful, your honor, initially I was going to say the same thing without demands, no, in my mind is saying the same thing, however we clarified it further by saying not high which means you're in the area of not a high production environment so there would be work for this individual given the addition of that explanation, particularly saying we're not talking about high demands and high for all three of these lines so there is work for this person.

(Tr. 48-49). When asked whether he would "still say that the past relevant work could not be performed", the VE responded: "I'm repeating that now. The three light jobs would fall within this. For past relevant work, the job of cashier, inventory clerk, and bookkeeper could be done by this individual." (Tr. 50).

> Plaintiff's counsel then asked the VE to clarify further:
>
> [**Counsel**] Okay. Just to clarify this because I'm not sure. If the hypothetical said, "Without demands for sustained pace, or concentration, high productivity, or strict time constraints, how would you interpret that?"
>
> [**VE**] Without demand for – if I heard you correctly, counsel, you did not put the word "High" in there?
>
> [**Counsel**] This is exactly what I said, let me repeat it again.
>
> [**VE**] Okay.
>
> [**Counsel**] Without demands for sustained pace, or concentration, high productivity, or strict time constraints.

3

>[**VE**] As I said, at least I thought I did, I put that as no, and there would be no work at all for that person. Your honor did clarify another interpretation and used the word "Qualitative using no high demands."
>
>[**Counsel**] Okay.
>
>[**VE**] I did opine a little bit differently, as a matter of fact, very differently on that one.

(Tr. 50-51).

Following the hearing, the ALJ submitted written interrogatories to the VE. (Tr. 168-72). The interrogatories noted that Plaintiff's past relevant work was a composite job consisting of four parts (inventory clerk, cashier, bookkeeper, auto mechanic). (Tr. 169). The interrogatories noted SSA policy dictates a claimant will only be found capable of performing a composite job if she can perform all parts of the job. (Tr. 170) (citing POMS DI 25005.020, 2011 WL 4753471). Having concluded Plaintiff could not perform the auto mechanic part of her past composite job, the ALJ found she was incapable of performing past relevant work. *Id.* The interrogatories then asked the VE to identify any other jobs which could be performed by the hypothetical individual. *Id.* He identified three jobs: cashier, receptionist, and gate guard. *Id.* He also identified three unskilled occupations that the hypothetical individual could perform: packager, mail clerk, and food service worker. (Tr. 171).

*ALJ Decision*

In her written decision, ALJ concluded Plaintiff had not engaged in substantial gainful activity since her application date, and had severe impairments of "COPD, cervical spondylosis, generalized anxiety disorder, and substance abuse disorder. (Tr. 14). She concluded these impairments did not meet or equal the listings, and Plaintiff retained the mental RFC to perform "assigned tasks in a setting without demands for sustained pace or concentration and without demands for high productivity or time constraints" as well as "the capacity to work in a stable

4

environment with clear and predictable expectations and infrequent changes in routine." (Tr. 16).[2]

The ALJ then found Plaintiff could not perform any past relevant work. (Tr. 19-20). The ALJ explained the confusion between herself and the VE at the hearing:

> The vocational expert initially responded that due to time constraints in the hypothetical ("without demands for high productivity or time constraints"). Based on [his] experience, productivity would be effected [sic] at least 20% or more so these jobs could not be performed based on [the] hypothetical and that there would be no other jobs fitting the limitations of the hypothetical that could be performed.
>
> However, the <u>vocational expert had misinterpreted</u> the phrased from the hypothetical, "<u>without demands for high productivity or time constraints</u>" as being "<u>without demands for productivity</u> or time constraints". In other words, the vocational expert had interpreted "without demands for high productivity" as "without demands for ANY productivity".
>
> With this clarification and considering, "with no demands for <u>high</u> productivity", the vocational expert stated there would be work the hypothetical individual could perform **including the light jobs in the claimant's past work**.
>
> Representative noted the original residual functional capacity is directly from DDS and with those words, the vocational expert found no jobs exist within the scope of the hypothetical. However as discussed above, that response by the vocational expert had been based on a misinterpretation of the factors in the hypothetical. The representative then clarified her statement in accordance with the clarification discussed above. To this, the vocational expert replied, he had initially stated there were no jobs for such a person but with the ALJ's clarification of no high demands, there would be jobs and that individual could perform all the jobs in the claimant's past relevant work except the job of auto mechanic.

(Tr. 20) (emphasis in original). Based on the VE's testimony, the ALJ concluded Plaintiff could perform jobs that exist in significant numbers in the national economy and therefore she was not disabled. (Tr. 21-22).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

---

2. Again, because Plaintiff only raises a claim related to the mental aspect of her RFC, the undersigned does not address the physical restrictions therein.

correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

      4.      Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises a single allegation of error: that the ALJ erred at Step Five in finding that Plaintiff could perform a significant number of jobs in the national economy. (Doc. 11, at 8-10). The Commissioner responds that the ALJ reasonably relied on the VE testimony and her step five determination is therefore supported by substantial evidence. (Doc. 12, at 6-9). For the reasons discussed below, the undersigned agrees with the Commissioner and recommends the decision be affirmed.

An ALJ may rely on a VE's testimony to provide substantial evidence that a claimant is not disabled. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (a VE's testimony may provide substantial evidence if the hypothetical question accurately conveys a claimant's restrictions). At the final step of the disability analysis, the ALJ must decide whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can make an adjustment to other work. 20 C.F.R.

§ 416.920(a)(4). The burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004). The VE's testimony may provide substantial evidence provided the hypothetical question posed accurately reflects a claimant's impairments. *Smith*, 307 F.3d at 378; *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 680 (6th Cir. 2013) ("So long as the hypothetical is accurate, the administrative law judge may rely on the vocational expert's testimony to find that the plaintiff can perform a significant number of jobs in the national economy.").

Plaintiff's argument is, in essence, that when the VE was posed a question with the exact wording in the ALJ's RFC determination, the VE responded that no jobs would be available to such a person. This argument, however, ignores the follow-up clarification between the ALJ and the VE about what the ALJ meant by the restrictions she posed. Although an RFC determination must be supported by evidence of record, it need not correspond to, or even be based on, any specific medical opinion. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Instead, it is the ALJ's duty to formulate a claimant's RFC based on all the relevant, credible evidence of record, medical and otherwise. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *see also* 20 C.F.R. § 416.945; SSR 96-8p, 1996 WL 374184.

Plaintiff is correct that the wording in the ALJ's RFC determination mirrors that of the state agency psychologist that Plaintiff "is capable of performing assigned tasks in a setting without demands for sustained pace or concentration, high productivity or strict time constraints". (Tr. 68) (state agency reviewing physician's opinion that Plaintiff is "moderately limited" in sustained concentration and persistence, and is "capable of performing assigned tasks in a setting without demands for sustained pace or concentration, high productivity or strict time constraints"); (Tr. 83) (same). It is, however, the ALJ's duty to develop the RFC and it need not directly correspond to a particular opinion. *See Brown*, 602 F. App'x at 331. It was the ALJ's prerogative to include only those limitations in the RFC (and therefore the hypothetical question) that she found credible and well supported by the record. *Casey*, 987 F.2d at 1235. And as the finder of fact, it was the ALJ's duty to interpret the record. Thus, to the extent there was any confusion over what the ALJ meant by the wording of the RFC, the law (and common sense) dictate that the ALJ's interpretation thereof controls. Additionally, this is not a case where the ALJ asked the hypothetical question and later added a different interpretation. Rather, the ALJ clarified her interpretation of that language *to the VE*, who then responded that jobs would be available under such an interpretation. *See* Tr. 48-50; *see also Mitchell v. Berryhill*, 2017 WL 886494 (E.D. Tenn.) ("Dr. Davis did not define the term 'infrequent' when giving his testimony, so it was the ALJ's duty as the finder of fact to interpret Dr. Davis's testimony. The ALJ offered a clear definition of the term on the record when posing his hypothetical question to the vocational expert.").

Thus, to the extent there was confusion over what the ALJ meant by the wording of the RFC, she clarified what she meant by that wording for the VE at the time of the hearing. With that clarification, the VE opined there would be jobs available to such an individual. This provides substantial evidence to support the ALJ's conclusions that there were jobs Plaintiff could perform.

*Smith*, 307 F.3d at 378; *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 680 (6th Cir. 2013) ("So long as the hypothetical is accurate, the administrative law judge may rely on the vocational expert's testimony to find that the plaintiff can perform a significant number of jobs in the national economy."). The undersigned finds Plaintiff's argument that the ALJ "omitted a significant limitation" from the RFC when she "changed the hypothetical to state that the individual **could work at her own pace**" unavailing. (Doc. 11, at 9) (emphasis in original). A review of the testimony reveals the ALJ clarified to the VE that the phrasing "without demands for sustained pace or concentration, and without demands for high productivity or time constraints" did not mean "no demands", but she meant to "exclude[] high demands, time constraints, and a sustained pace, so that would include work performed at your own pace that does not have high productivity demands or time constraints." (Tr. 49). This was in contrast to the VE's original interpretation that "without demands for sustained pace or concentration" meant this meant "no, none, zero sustained pace". (Tr. 48). The ALJ thus did not *add* an additional limitation, but merely clarified what she meant by the limitation she provided initially. The VE's response—that jobs would be available to such an individual—therefore provides substantial evidence to support the ALJ's decision. *Smith*, 307 F.3d at 378; *Branon*, 539 F. App'x at 680.[3]

---

3. The undersigned agrees with Plaintiff that the ALJ's explanation of this back-and-forth in her written decision is not entirely clear. *See* Tr. 20. That explanation focuses on a misinterpretation of the productivity limitation, rather than pace limitation. *Id*. However, at the hearing, the ALJ and VE discussed these two components together. *See* Tr. 48 (VE originally responded that there would not be jobs available because, as he heard the hypothetical, an individual would not be productive 20 percent of the time because "it doesn't say frequent, constant occasional, it says no, none zero sustained pace but that's the definition of work."). This somewhat confusing explanation does not change the above analysis—it was the ALJ's duty to define the RFC, *see Brown*, 602 F. App'x at 331, and the VE's response (indicating that jobs would be available to such an individual) to the ALJ's clarification about the meaning of that RFC provides substantial evidence to support the Step Five determination, *see Smith*, 307 F.3d at 378.

**CONCLUSION**

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI supported by substantial evidence, and therefore recommends the decision be affirmed.


 s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).